## MACE v. YOUNG et al.
### No. 9892.

Court of Civil Appeals of Texas. Austin.
June 14, 1950.

On Motion for Rehearing July 12, 1950.

Owen F. Watkins, of Mexia, for appellant.

J. B. Talley, of Temple, for appellees.

HUGHES, Justice.

This case involves the construction of a trust agreement, the character of rights acquired by the use of certain private funds in connection with the purchase of the trust property, and a question of court costs.

The trust was created on the 25th day of February, 1915, by Mrs. Glenn Huling for the benefit of her sister, Mrs. Eva Mace, and for the express purpose "of providing a reasonable income and financial aid to my said sister during her natural life."

The trust agreement was in the form of a trust deed in favor of W. R. Young, brother of Mrs. Huling and Mrs. Mace, as trustee, and conveyed certain described farm lands upon the following trust: "The said W. R. Young and his successors in trust shall have the right to manage, control, sell and convey said property and upon such sale shall pay over to Mrs. Eva Mace, the consideration for which same is sold, above the sum of $6,400.00 and invest and re-invest the remainder of the proceeds thereof in other property or securities or loans for the purpose of producing an income from said property and for the purpose of producing the best income possible in the judgment of such trustee, and to annually pay over to said Eva Mace during her natural life all of the net rents, revenues and income from said trust estate with the right on the part of the trustee to annually use so much of the principal of said trust estate in the maintenance and support of said Eva Mace as such trustee may deem right and proper."

Upon certain conditions which did not occur, full title to the corpus of the trust property was to vest in Mrs. Mace.

Disposition of the trust property is controlled by the following provision of the trust agreement: "Should the said Eva Mace die leaving either W. R. Young, J. E. Young or myself surviving her, any portion of said trust estate remaining shall be transferred to my two children, Eva Belle Huling and Elizabeth Mandana Huling, if living and in case either of said children being dead the heirs of such deceased child shall take the share of the deceased child."

Mrs. Eva Mace died April 11, 1949, and left surviving her W. R. and J. E. Young and Mrs. Huling, now Mrs. Quaid.

The farm land constituting the original trust property was sold by the trustee for the sum of $8,800 cash. It is not denied that under the terms of the trust Mrs. Mace was entitled to receive immediately and as her own $2,400 of the $8,800. This money was not all paid to Mrs. Mace; $1,287 of it was retained by the trustee. Concerning its disposition the trustee, Mr. Young, was asked this question: "Q. Did Mrs. Mace join with you and invest the excess of the money received in the sale of the original trust estate in the purchase of the drugstore building?"

And he gave this answer: "A. The way that came about was this, when I found I could sell that property I looked for a reinvestment and I found that I could purchase this drugstore property which would return a considerably better revenue or income for Mrs. Mace. At the time the land was only paying Three or Four Hundred Dollars and sometimes only Two Hundred and Fifty Dollars. I found that this property could be rented for Eighty Dollars a month at that time. After paying the interest on the money that I would have to borrow to make the purchase and paying the taxes and so on, it would leave her something like Six Hundred or maybe a little better annually. I discussed with her about that and she was agreeable, of course, to making the reinvestment."

Again the trustee was questioned:

"Q. All right, did you testify that you did by agreement with Mrs. Mace invest the excess of her money in this drugstore building? A. Yes, it was understood that I was to withhold that much money and that it was to be used for that purpose."

The drugstore property was purchased from Mrs. Yates for, as recited by the deed of conveyance dated 7-17-28, $5,500 cash, subject to a secured debt for $3,000 in favor of the United Savings Bank of Detroit and a secured debt of $500 in favor of H. A. McCrea, and is now worth considerably more than its original cost.

All of the money received by Mr. Young from the sale of the farm lands was kept in the bank account of W. R. Young, trustee, and the drugstore was paid for in this manner, as testified to by Mr. Young: "* * * I had this Sixty-four Hundred Dollars and the Twelve Hundred and some odd dollars, whatever that would be, added together. The first thing that I paid out of the fund was Five Thousand Two Hundred and Sixty-five Dollars that I paid as the cash payment to Mrs. Yates. Later I paid Five Hundred and Fifty Dollars, Five Hundred Dollars and the interest, on this personal note that came out of the fund, and I still had some left. There was still some money left. Then when the final note for Three Thousand Dollars came due, if I remember it right, I at that time borrowed Fifteen Hundred Dollars from one of Mr. Abney's clients. I think that was when I borrowed it so as to enable me to finish taking up these notes."

Mr. Young could not know and did not attempt to testify that any of the money belonging to Mrs. Mace actually was or was not used in making the initial cash payment to Mrs. Yates. As he explained it: "I didn't carry part of it in one pocket and part in another. It was all in one account and I checked on that account to pay for these things."

On May 4, 1929, Mr. W. R. Young executed and acknowledged an instrument denominated a "certificate of interest," which reads:

"I, W. R. Young, of Lampasas County, Texas, do hereby make the following statement of certificate of interest for the benefit of Mrs. Eva Mace of Lampasas County, Texas:

"Acting as Trustee in a certain deed from Mrs. Glenn Huling to W. R. Young Trustee recorded in Vol. 28, page 240 of the Deed Records of Lampasas County, Texas, I sold the real estate described in said deed and received the consideration of $8,800. Under said trust I was to hold back or reinvest the sum of $6,400 for the benefit of said Mrs. Mace and deliver the balance of the consideration to her.

"Still acting under said trust I purchased from Mrs. Lillie E. Yates the building located upon the West one-third of Lot No. 6 in Block No. 11 of the Old Town of Lampasas, for the purchase price of $9,000 and afterwards paid the sum of $187 for improvements on same, making the total cost of $9,187.

"Of this consideration I reinvested the sum of $6,400 held by me as such trustee under said deed, and the remainder of said consideration was paid by Mrs. Eva Mace as follows: The sum of $1,287 in cash and the sum of $1,500 in one note which now stands as a lien against said West one-third of Lot No. 6 in Block No. 11 Old Town of Lampasas.

"Under said trust I as Trustee shall hold an equity of $6,400 in said property and the remainder of the equity in said property is the separate estate of said Mrs. Eva Mace, and all rents and revenues derived therefrom shall be her property, and it will be her duty to pay all expenses in connection with same.

"The said sum of $6,400 represented by said trust was paid in cash by me as such trustee, and the sum of $1,287 was paid in cash by the said Mrs. Eva Mace out of the surplus of said $8,800 consideration, and said note for $1,500 was executed by me as Trustee and was executed for the purpose of securing a loan with which the balance of the purchase price of said West one-third of Lot No. 6 in Block 11 could be paid on behalf of said Mrs. Mace."

This instrument was prepared by an attorney at the request of Mr. Young and Mrs. Mace, and after the two had discussed the matter. This instrument as well as the statements which we have just made concerning its preparation were excluded by the trial court on the ground that the certificate was an ex parte statement on the part of Mr. Young and could not be used to bolster his present testimony and could not affect the title to the drugstore prop-

erty which by the deed vested in Mr. Young as trustee, and because the same did not constitute a contract between the trustee and Mrs. Mace.

The admissibility of this instrument will be discussed later herein.

This suit was brought by Howard F. Mace, who it is conceded, is entitled to one-half of any interest which Mrs. Mace had in the drugstore building or the money used in connection therewith. The adversary parties are appellees, Mrs. Elizabeth Man-dana Nash and Mrs. Eva Belle Klipsch, who are the two children of Mrs. Glenn Huling named in the trust agreement as the persons to whom the trust property would go under contingencies which did occur.

The principal purpose of the suit is to determine the rights of the parties under the foregoing facts.

The trial court, without a jury, rendered judgment vesting title to the drugstore property in the two daughters of Mrs. Huling and in favor of appellant for $643.50 (one-half the $1,287 belonging to Mrs. Mace and used in the purchase of the drugstore property), with interest from entry of the judgment and secured by an equitable lien on the drugstore property.

■ Appellant's first contention is, as reflected by his first two points, that the corpus of the trust estate was limited to $6,400, either in money or property, and that any increase in value of the trust property belonged to Mrs. Eva Mace in her own right. Stated a little differently, appellant concedes that the trustee could, under the terms of the trust, exhaust the principal of the trust property for the maintenance and support of the beneficiary, but that he could not augment the value of the property without vesting title to such increased value in Mrs. Eva Mace.

This construction of the trust agreement is, in our opinion, wholly untenable.

There is no language in the agreement which could possibly be used to support any such construction. Not only this, but we believe the clearly expressed intention of the trustor was just to the opposite. Mrs. Huling created the trust to provide a "reasonable income and financial aid" for her sister, and sale of the farm lands was authorized in order that the trustee could procure "the best income possible" from the trust by making other investments and thus increase the amount of net revenues to which Mrs. Mace was entitled. Mrs. Huling, of course, relied upon the business acumen of the trustee, her brother, to bring about this result, and this record reflects that he was very successful. If we should adopt the reasoning of appellant it would be virtually impossible for the trustee to have increased the income of Mrs. Mace, for as soon as a dollar was added to the value of the trust property it must be lopped off and paid to the beneficiary before it had a chance to earn any revenue.

We, therefore, overrule the first two points and pass to a consideration of appellant's last two points which complain of the failure of the court to grant him relief based upon the use of $1,287 belonging to Mrs. Mace in the purchase of the drugstore building and the incidental question of the admissibility in evidence of the "certificate of interest."

We are of the opinion that the undisputed evidence establishes in Mrs. Mace title in the drugstore property in the proportion which 1,287 bears to 9,000 ($9,000 being the purchase price of this property and $1,287 being the amount thereof paid by Mrs. Mace).

The trial court found that the $5,500 cash payment made on the purchase of the drugstore property came from the $6,400 which belonged to the trust fund. There is no evidence to support this finding. We have set out the testimony of the trustee and it shows that the trust funds and those belonging to Mrs. Mace were commingled and used by the trustee for the common and previously agreed purpose of acquiring the drugstore property and discharging the debts against it.

The trial court treated the use of the $1,287 belonging to Mrs. Mace as a loan to the trustee. There is no justification for this conclusion. This record shows that Mr. Young, the trustee, was an excellent business man and that he capably and con-

scientiously managed the affairs that were entrusted to him. He never once testified that he borrowed any money from Mrs. Mace or that she made a loan to him, but always referred to the transaction as an investment or "re-investment." No note was executed and no interest nor any payment on the principal was ever made. As a matter of fact no such payments could have been made by the trustee except with funds which belonged to Mrs. Mace. This is true because Mrs. Mace was entitled to the earnings from the trust property.

■ Our conclusion that Mrs. Mace acquired the stated interest in the drugstore property is based upon the following well established legal principles: 

"The Supreme Court long ago announced the settled rule that

" 'Where one buys land with the money of another and takes the deed in his own name, a trust results in favor of the person whose money was employed in making the purchase. The latter is the equitable owner of the land, and the purchaser is a mere trustee and holds for the benefit of him who paid the purchase money.'

"While a court of law looks to legal ownership according to the deeds evidencing title from the common source, equity keeps its eye on the consideration that passed and protects the party who furnishes it. In other words, the beneficial estate follows the consideration and attaches to the person from whom it came. Where only part of the purchase money was contributed by the person whose name does not appear in the deed, his ownership extends to the proportion that his contribution bears to the total price." 42 Tex. Jur., pp. 637-638.

■■ Since parol evidence is admissible to establish a trust of the foregoing nature (Vol. 42, p. 680, Tex.Jur.), it logically follows that written evidence thereof should not be excluded. The "certificate of interest" should have been admitted in evidence although, in our opinion, the testimony of Mr. Young was sufficient to establish the trust and its extent.

The question of court costs is raised by appellees and relates to a fee of $100 allowed J. C. Dabney as attorney for the trustee and ordered paid out of funds belonging to the trust estate.

■ Under our holding concerning the title to the trust property, payment of this fee from trust funds is proper.

Since our decision will call for an adjustment of accounts and since the issues pertaining to partition of the property have not been adjudicated, we reverse the judgment of the trial court and remand this cause for further proceedings in accordance with this opinion.

Reversed and remanded with instructions.

On Appellant's Motion for Rehearing.

Appellant is especially dissatisfied with our method of calculating the proportions in which the drugstore property was owned. We based our figures on $9,000 as being the purchase price of the property. This is correct but it includes $1,500 borrowed by the trustee and secured by a lien on the entire property, which debt and lien are outstanding.

We are of the opinion that this $1,500 loan does not affect the proportions in which the property was owned by the trust estate and Mrs. Mace.

This obligation created no actual liability of the trust estate other than the lien because the trust estate owned no other property out of which a deficiency judgment could be satisfied. If the trustee were personally liable on the note, a matter we do not decide, this liability does not alter the respective amounts invested by the trust estate and Mrs. Mace in the purchase of the property, and we can think of no valid reason for treating this liability as an investment for either the trust estate or Mrs. Mace.

■ We, therefore, correct our original opinion and vest title to the drugstore property in Mrs. Mace in the proportion which 1287 bears to 7687 (7687 being $1287 + $6400, the respective amounts contributed by Mrs. Mace and the trust estate towards the purchase of the drugstore property).

Appellant's motion is in all other respects overruled.

Granted in part and in part overruled.